CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Scott M. Boger, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00083 |
| | ) | |
| City of Harrisonburg, Virginia, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Scott M. Boger, proceeding *pro se*, brought this action to challenge the City of Harrisonburg's (the "City") speed camera enforcement program. He alleges that he received a summons for a speeding violation captured by a speed camera solely because he was the first owner listed on the registration of the vehicle in question. After receiving the summons, he asserted that he was not driving the vehicle at the time of the violation and requested a hearing in state court. The state court dismissed the case during the hearing, and Boger then filed this lawsuit against the City, Sergeant Wayne Westfall of the City's police department, City attorney Wesley Russ, and Altumint, Inc., a third-party vendor that administers the City's speed camera program. Boger's second amended complaint alleges several violations of the United States Constitution and Virginia law and seeks damages and declaratory relief.

This matter is before the court on a motion to dismiss filed by the City, Westfall, and Russ (collectively, the "City Defendants") (Dkt. 51); Boger's motion for leave to file a sur-reply regarding the motion to dismiss (Dkt. 63); Boger's two motions for leave to file

supplemental pleadings (Dkts. 64 and 71); Boger's motion to certify a question of state law (Dkt. 74); Boger's motion to clarify or correct the record (Dkt. 57); and Boger's revised motion for sanctions (Dkt. 50).  For the reasons outlined below, the court will deny Boger's motion for leave to file a sur-reply and will grant the City Defendants' motion to dismiss.  Boger's motions for leave to file supplemental pleadings, motion to certify a question of state law, motion to clarify or correct the record, and revised motion for sanctions will be denied.

## I.    Background

### A.  Factual History

The facts in this section are taken from Boger's second amended complaint and supporting exhibits and are accepted as true when resolving the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

On or about July 9, 2024, Boger received a "notice of violation/summons" for a speed camera violation in Harrisonburg, Virginia.  (Second Am. Compl. at 7 (Dkt. 49); *see* Second Am. Compl. Exs. A, B (Dkts. 49-1, 49-2) [hereinafter "Summons"].)  The summons stated that he owed $100 for the violation and provided instructions for paying the ticket or contesting it.  (Summons.)  Boger is listed as a co-owner of the offending vehicle on the vehicle's title and registration, but he asserts that he was not driving the vehicle at the time of the violation.  (Second Am. Compl. at 7–8; *see* Second Am. Compl. Ex. C (Dkt. 49-3) [hereinafter "Boger Aff."].)

Virginia Code § 46.2-882.1 governs the use of speed cameras in the Commonwealth and the prosecution of speeding violations captured by such cameras.  The statute provides

that the operator of a vehicle that a camera captures speeding in certain zones is liable for a civil penalty up to $100. Va. Code. Ann. § 46.2-882.1(C). It creates a rebuttable presumption that the owner of the vehicle was the person who committed the speeding violation, then enumerates two ways the owner may rebut that presumption. *Id.* § 46.2-882.1(E). First, the owner may "file[] an affidavit by regular mail with the clerk of the general district court that he was not the operator of the vehicle at the time of the alleged violation and provide[] the name and address of the person who was operating the vehicle at the time of the alleged violation." *Id.* Second, the owner may provide that same information through sworn testimony in open court. *Id.* The statute also states that any photographs, video, or other recorded images "evidencing [a vehicle speed] violation shall be available for inspection in any proceeding to adjudicate the liability for such vehicle speed violation." *Id.* § 46.2-882.1(D).

On July 11, 2024, Boger mailed an "affidavit of non-operation" to Altumint, the third-party vendor that administers the City's speed camera program (and who had issued the summons on the City's behalf). (Second Am. Compl. at 8–9; *see* Boger Aff.) In the affidavit, he stated that he was not driving the vehicle at the time of the violation and explained that the vehicle was jointly owned. (Boger Aff.) On August 23, 2024, after receiving no response from Altumint, Boger sent a copy of the affidavit to the Clerk of the Harrisonburg-Rockingham General District Court and requested a court date. (Second Am. Compl. at 9.) A few days later, the Clerk returned the affidavit and told Boger that he should address it to the "photo ticketing company" (presumably Altumint). (*Id.*)

Around late August 2024, Boger had a phone conversation with Sergeant Wayne Westfall about the speeding ticket. (*Id.*) Westfall is a police officer for the City and is involved

- 3 -

in overseeing the City's speed camera enforcement program. (*Id.* at 6.) During their conversation, Boger informed Westfall that he was a joint owner of the ticketed vehicle and asked "why he was prosecuted and the co-owner of the vehicle was not." (*Id.* at 9.) Westfall told Boger that he received the summons because he was listed "first on the registration." (*Id.*)

The Harrisonburg-Rockingham General District Court held a hearing on Boger's case on October 9, 2024. (*Id.* at 10.) Westfall testified at the hearing and acknowledged that Boger "was prosecuted because his name was listed first on the vehicle registration, without any investigation into who was driving the vehicle." (*Id.*) According to Boger, the court then "halted the proceedings, dismissed the case, and admonished the City Attorney [Wesley Russ] and Sgt. Westfall" for prosecuting Boger based on his co-ownership of the vehicle. (*Id.*) Boger alleges that the court stated: "Stop. This case is over. I've heard enough. I'm dismissing this case. . . . You can't do that with joint owners." (*Id.* at 10 n.4.)

**B. Procedural History**

Boger filed his initial complaint in this court on October 16, 2024, (Dkt. 1), then filed a first amended complaint as a matter of course on October 25, 2024, (Dkt. 9). His first amended complaint alleged causes of action under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment Due Process and Equal Protection Clauses and of his First Amendment right to petition. (*See id.* at 10–18.) He also alleged violations of his rights under the Constitution of Virginia, a violation of Virginia's speed camera enforcement statute,

common-law negligence, and civil conspiracy.  (*See id.* at 18–21.)  Boger sought damages, a declaratory judgment, and injunctive relief.[1]

Along with his original complaint, Boger filed a motion for a temporary injunction to bar enforcement of Virginia's speed camera enforcement statute, Va. Code. § 46.2-882.1, on the grounds that it violates the Due Process and Equal Protection Clauses.  (Dkt. 3.)  On December 10, 2024, the court dismissed that motion for lack of subject matter jurisdiction.  (Dkt. 45.)  The court held that Boger lacked Article III standing to seek either preliminary or permanent injunctive relief against the enforcement of § 46.2-882.1, as he had not alleged that he faced any ongoing injury or imminent threat of future prosecution under the statute.  (Dkt. 44 at 2.)  Based on that holding, the court also dismissed the claims in Boger's first amended complaint without prejudice to the extent they sought injunctive relief.  (*Id.*)

The day after the court entered that order, Boger moved for leave to file a second amended complaint.  (Dkt. 46.)  Defendants did not oppose the motion, and U.S. Magistrate Judge Joel C. Hoppe granted Boger leave to amend on December 16, 2024.  (Dkt. 48.)

Boger's second amended complaint alleges the same causes of action as his first amended complaint, removes his request for injunctive relief, and adds a request for nominal damages.  (*See* Second Am. Compl. at 11–24.)  Count 1 alleges that all Defendants selectively prosecuted Boger in violation of the Equal Protection Clause.  (*Id.* at 11–12.)  Count 2 alleges

---

[1] After Boger filed his first amended complaint, the City Defendants filed a notice of constitutional question pursuant to Federal Rule of Civil Procedure 5.1(a).  (Dkt. 12.)  Boger filed a similar notice on November 1, 2024.  (Dkt. 14.)  On November 5, 2024, the court filed a certificate pursuant to 28 U.S.C. § 2403 notifying the Attorney General of Virginia that Boger had challenged the constitutionality of Virginia's speed camera enforcement statute.  (Dkt. 16.)  The certificate stated that the Attorney General could intervene within 60 days of the date the City Defendants filed their Rule 5.1(a) notice, *see* Fed. R. Civ. P. 5.1(c), and requested that the Attorney General notify the court within 21 days if the Commonwealth planned to intervene.  (Dkt. 16.)  The Commonwealth did not intervene in this case.

that the City, Westfall, and Altumint violated the Due Process Clause by failing to investigate who was driving the ticketed vehicle. (*Id.* at 12–13.) Count 3 alleges that the City and Altumint violated Boger's procedural due process rights by depriving him of a meaningful defense to the prosecution. (*Id.* at 14–15.) Count 4 asserts a *Monell* claim for municipal liability against the City. (*Id.* at 15–17.) Count 5 alleges a claim against the City and the "Court Clerk"[2] for "denial of access to courts" in violation of the Due Process Clause and the First Amendment. (*Id.* at 17–18.) Count 6 alleges that the City and Altumint violated the Due Process Clause and separation of powers by delegating "essential judicial functions"—the receipt and processing of affidavits—to a private vendor. (*Id.* at 18–19.) Count 7 alleges that all Defendants violated the Constitution of Virginia's due process and equal protection clauses. (*Id.* at 19–20.) Counts 8, 9, and 10 allege claims against the City and Altumint for violations of Va. Code § 46.2-882.1, common-law negligence, and civil conspiracy, respectively. (*Id.* at 20–22.) Boger seeks compensatory, punitive, and nominal damages, a declaratory judgment that Va. Code § 46.2-882.1 violates his constitutional rights, and an order directing the City and Altumint to provide an accounting of funds collected through the speed camera program and "restitution to affected individuals for funds collected under unconstitutional practices." (*Id.* at 22–23.)

On December 30, 2024, the City Defendants moved to dismiss the second amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6). (Dkt. 51.) They first argue that Boger lacks Article III standing to seek any form of relief because he cannot demonstrate any past, ongoing, or imminent future injury in fact. (City Defs.' Mem.

---

[2] Boger has not named the Harrisonburg-Rockingham General District Court Clerk as an individual defendant in this case.

in Supp. of Mot. to Dismiss Second Am. Compl. at 5–9 (Dkt. 52) [hereinafter "City Defs.' Mem."].)  They then argue that each of Boger's individual claims fails as a matter of law.  (*See id.* at 9–27.)  Boger filed a response opposing the motion to dismiss, (Pl.'s Opp'n to Defs.' Mot. to Dismiss (Dkt. 55) [hereinafter "Pl.'s Opp'n"]), and the City Defendants filed a reply in support, (Dkt. 61).  Boger also filed a motion for leave to file a sur-reply to address certain arguments the City Defendants raised in their reply brief.  (Dkt. 63.)  The City Defendants oppose that motion.  (Dkt. 66.)

On January 10, 2025, the one remaining Defendant, Altumint, filed a consent motion to stay its deadline for filing a responsive pleading to the second amended complaint until 21 days after the court resolves the City Defendants' motion to dismiss.  (Dkt. 59.)  The motion explained that Boger had requested the stay and wished to "learn the outcome of that motion to dismiss in order to determine whether to maintain claims against Altumint."  (*Id.* at 1.) Judge Hoppe granted the requested stay on January 13, 2025.  (Dkt. 62.)

Boger has filed several additional motions that are currently pending.  On December 23, 2024, he filed a motion for sanctions against Defendants for alleged misrepresentations in a declaration from Westfall.  (Dkt. 50.)  On January 8, 2025, he filed a motion asking the court to require the City Defendants to clarify or correct alleged omissions in their filings.  (Dkt. 57.) In addition, Boger has twice moved for leave to supplement his pleadings under Federal Rule of Civil Procedure 15(d).  On January 15, 2025, he moved for leave to add allegations about a second prosecution for a speed camera violation, which occurred after he filed his second amended complaint.  (Dkt. 64.)  On March 13, 2025, Boger moved for leave to file another supplemental pleading, which seeks to add allegations that the City voluntarily dismissed the

- 7 -

prosecution for his second speed camera violation in March 2025, prior to a scheduled state-court hearing. (Dkt. 71.) His second motion to supplement also seeks to add a claim that the City's contract with Altumint was "ultra vires and void under Va. Code § 46.2-882.1(H)," because the statute only authorizes "law-enforcement agencies" to delegate speed camera enforcement functions to private entities. (*Id.* at 5.) Finally, on April 10, 2025, Boger filed a motion to certify a question of law to the Supreme Court of Virginia. (Dkt. 74.) He asks for certification of the question "[w]hether, under Virginia Code § 46.2-882.1(H), a city or county may lawfully enter into a contract with a private vendor to operate a photo speed enforcement program when the statute authorizes such contracts only by a 'law-enforcement agency,' and such agency lacks independent legal capacity to contract." (*Id.* at 1.) The City Defendants oppose each of Boger's motions. (Dkts. 65, 67, 72, 76.)

## II.     Standard of Review

### A.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant may bring either a facial or factual challenge to subject matter jurisdiction. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge—which the City Defendants raise here—"contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

**B. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may consider documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166.

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating pro se litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). At the same time, though, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990).

*Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## C. Rule 15(d)

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Fourth Circuit has clarified that the standard for granting leave to supplement a pleading is "nearly identical" to the standard governing whether to grant a motion for leave to amend under Rule 15(a). *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). "In either situation, leave should be freely granted, and should be denied only where good reason exists[.]" *Id.* (internal quotation marks omitted). A court should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (addressing Rule 15(a)) (citation and emphasis omitted). Leave to amend or supplement may be denied as futile when the proposed pleading "fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021); *see, e.g.*, *Barber v. Hall*, No. 7:14-cv-00519, 2015 WL 5310790, at *5 (W.D. Va. Sept. 11, 2015) (applying this standard to Rule 15(d) motions).

### III.    Analysis[3]

#### A. Subject Matter Jurisdiction

The City Defendants first argue that Boger lacks Article III standing to seek injunctive, declaratory, or monetary relief and ask the court to dismiss his entire complaint for lack of subject matter jurisdiction.

Under Article III of the United States Constitution, a federal court may exercise subject matter jurisdiction only over "cases" and "controversies."  U.S. Const. Art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  "Embedded in this limitation is a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61).  Here, the parties dispute only whether Boger has alleged a cognizable injury in fact—that is, a harm that is "real, and not abstract."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotation marks omitted).

---

[3] The court will deny Boger's motion to clarify or correct the record (Dkt. 57).  In that motion, Boger argues that some of the City Defendants' filings misleadingly omit information about "the statutory and constitutional framework governing affidavit processing under Virginia Code § 46.2-882.1." (*Id.* at 1.)  The court has reviewed the filings at issue and is satisfied they are not misleading.  Boger simply disagrees with how the City Defendants view their statutory and constitutional obligations, and the court has considered both sides' arguments on those issues when resolving the motion to dismiss.  The court also will deny Boger's motion for leave to file a sur-reply regarding the motion to dismiss (Dkt. 63).  None of the arguments the City Defendants raise in their reply brief warrants a further response.  Even if the court considered the arguments in Boger's proposed sur-reply (Dkt. 63-2), they would not affect the court's ruling on the motion to dismiss.  Finally, the court will deny Boger's revised motion for sanctions (Dkt. 50).  The court has reviewed Boger's arguments in support of that motion and finds no grounds for sanctioning any Defendant under Federal Rule of Civil Procedure 11.

This court previously held that Boger lacked Article III standing to seek injunctive relief in this case.  In suits for injunctive relief, the injury-in-fact element requires a plaintiff to "allege an injury that is concrete, particularized, and immediately threatening."  *Griffin*, 912 F.3d at 653.  The threatened injury must be "imminent"—"allegations of *possible* future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  This court concluded that Boger's amended complaint did not allege any imminent threat that he would face another prosecution for a speeding violation based on his co-ownership of a vehicle.  It explained that such an injury was contingent on a few different events occurring, one of which was a violation of traffic laws.  (*See* Dkt. 44 at 8–9.)  The fact that unlawful conduct was a predicate to any future harm underscored that the alleged injury did not satisfy Article III's injury-in-fact requirements.  (*See id.* at 9.)

Boger's second amended complaint does not request injunctive relief, but it does seek a declaratory judgment that the City's speed camera enforcement program violates his constitutional rights.  (*See* Second Am. Compl. at 23.)  Just as Boger lacked standing to seek injunctive relief, he lacks standing to seek declaratory relief.  A plaintiff requesting a declaratory judgment, like one requesting an injunction, "must establish an ongoing or future injury in fact."  *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018).  A plaintiff "may not rely on prior harms" to establish standing to sue for either form of relief.  *Overbey v. Mayor of Balt.*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018)); *see also Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 878 (D. Md. 2017) ("The standing requirements for declaratory relief and injunctive relief are essentially the same.").  Because Boger has not

alleged any imminent threat of ongoing or future injury, the court lacks subject-matter jurisdiction over his claims for declaratory relief.  *See Clapper*, 568 U.S. at 409.

After filing his second amended complaint, Boger moved for leave to supplement that pleading with new factual allegations which, in his view, show he now faces an imminent threat of injury.  He alleges that he received a second summons for a speed camera violation in January 2025, which involved a different jointly owned vehicle.  (Dkt. 64-2 at 1.)  He does not specify whether he was driving the vehicle at the time of that speeding violation.  In a second motion for leave to supplement, Boger adds that the City voluntarily dismissed the prosecution for the January 2025 summons shortly before a state-court hearing.  (*See* Dkt. 71 at 2–3.) According to Boger, the second summons demonstrates an ongoing pattern of constitutional violations.  (*See id.* at 3–4.)

Boger's new allegations, however, do not give him Article III standing to seek prospective relief.  Because the City has voluntarily dismissed the second case, he does not face any ongoing harm of prosecution.  He is in the same position he was when the court first dismissed his claims for injunctive relief, but now with two dismissed speeding prosecutions instead of one.  Any future injury will occur only if Boger or another person driving a vehicle he owns commits a speeding violation.  As this court explained before, courts "assume that [plaintiffs] will conduct their activities within the law" when assessing the risk of future injury. *Doe v. Sutton-Wallace*, No. 3:18-cv-00041, 2019 WL 5088769, at *6 (W.D. Va. Oct. 10, 2019) (quoting *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005)); *see O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).  Boger's supplemental pleading does not identify an ongoing or imminent future prosecution, so he continues to lack Article III standing to seek prospective

relief.  Thus, the court will deny Boger's motion for leave to file supplemental pleadings
addressing the second prosecution as futile.[4]

That leaves the question whether Boger has sufficiently alleged a *past* injury in fact that
gives him standing to seek damages from the City Defendants.  "The most obvious concrete
injuries are 'tangible harms, such as physical harms and monetary harms.'"  *O'Leary v.
TrustedID, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023) (quoting *TransUnion*, 594 U.S. at 425).  "If a
defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a
concrete injury in fact under Article III."  *TransUnion*, 594 U.S. at 425.  Here, Boger says he
suffered monetary harm as a result of his 2024 prosecution for the speed camera violation.
He specifically alleges that he incurred "economic losses such as lost income, transportation
expenses, postage costs, and investigative expenses" when defending against the summons.
(Second Am. Compl. at 23.)

The City Defendants do not agree.  They first argue that Boger cannot show any past
injury because he received adequate due process and the state court ultimately dismissed the
case.  (*See* City Defs.' Mem. at 6.)  But those issues go to the merits of Boger's claims; they do
not prevent Boger from establishing a concrete injury related to his defense against the
prosecution.  As the Fourth Circuit has explained, "[a] plaintiff's standing to bring a case does
not depend upon his ultimate success on the merits underlying his case."  *Covenant Media of
S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 429 (4th Cir. 2007); *see also Henson v. Honor
Comm. of the Univ. of Va.*, 719 F.2d 69, 72 n.5 (4th Cir. 1983) (holding that the dismissal of

---

[4] Even if Boger had standing to seek forward-looking relief, his claims against the City Defendants are subject to dismissal
under Rule 12(b)(6) for the reasons discussed below.

university disciplinary charges did not moot a due process claim arising from those charges in which the plaintiff sought nominal damages).

Nor, as the City Defendants argue, is Boger alleging the type of "bare procedural violation" that fails to satisfy the injury-in-fact requirement. *Spokeo, Inc.*, 578 U.S. at 340. The Supreme Court has explained that a "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Importantly, however, the types of "purely procedural rights" at issue in *Spokeo* and *Summers* involved decision-making procedures "that did not 'require [or] forbid any action on the part of' the plaintiffs." *Cawthorn v. Amalfi*, 35 F.4th 245, 252–53 (4th Cir. 2022) (quoting *Summers*, 555 U.S. at 493). Here, by contrast, Boger alleges that he suffered economic and non-economic harm— the concrete interest that was negatively affected—*because* the City subjected him to prosecution under an unlawful enforcement scheme. Thus, his claims stem from "real" alleged injury, not merely "abstract" grievances with the enforcement scheme. *Spokeo, Inc.*, 578 U.S. at 340.

The City Defendants next point out that "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). That is true, but *Steel Co.* addressed a plaintiff's attempt to establish standing in a case by pointing to the costs of litigating *that same case.* The Supreme Court explained that "[t]he litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Id.*; *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (holding that an "interest in attorney's fees is, of course,

insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"). The Court did not hold that monetary or other losses incurred in an earlier, allegedly unlawful proceeding that prompted the litigation before the district court cannot constitute an injury in fact. Neither of the other cases cited by the City Defendants supports such a proposition. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) (holding that "mere litigation expense" did not constitute an "irreparable injury" that could excuse a failure to exhaust administrative remedies before a federal agency); *Ward v. Nat'l Patient Acct. Servs. Sols.*, 9 F.4th 357, 363 (6th Cir. 2021) (holding that "the economic expense of retaining counsel" was not an Article III injury in fact).

In short, the monetary costs Boger alleges he incurred during the prosecution of the 2024 speed camera violation are a "traditional tangible harm[]" that qualifies as a concrete injury under Article III.[5] *TransUnion*, 594 U.S. at 425. Accordingly, the court concludes that Boger has standing to sue the City Defendants for damages.

**B. Analysis of Boger's Individual Claims**

As noted above, Boger alleges several different causes of action under the United States Constitution, the Constitution of Virginia, and Virginia statutory and common law. The City Defendants argue that Boger's claims all fail as a matter of law. The court will begin by

---

[5] Boger also alleges that he suffered non-economic injuries because of the City's prosecution, including "significant emotional distress and diversion from academic responsibilities." (Second Am. Compl. at 23.) While the Article III standing analysis does not turn on those alleged harms, there is reason to believe that they, too, may constitute concrete injuries in fact. The Supreme Court has explained that "[v]arious intangible harms can also be concrete." *TransUnion*, 594 U.S. at 425. And the Fourth Circuit has held that an alleged injury satisfies Article III's requirements when it may be remedied by nominal damages in a § 1983 action. *See Covenant Media*, 493 F.3d at 428–29 (holding that an alleged injury involving a city's untimely processing of a sign application established standing in a § 1983 action because the injury was "redressable at least by nominal damages").

addressing Boger's claims alleging violations of the U.S. Constitution and then turn to his state-law claims.

    1.  <u>Alleged violations of U.S. Constitution</u>

      *i.*  *Equal protection (Count 1)*

Boger first claims that the City Defendants violated the Equal Protection Clause by prosecuting him for the speeding offense solely because he was the first-listed owner on the vehicle registration. (Second Am. Compl. at 11–12.)

The City's classification between the owners listed on a vehicle's title and registration documents does not implicate a suspect class or fundamental right, so the court applies rational-basis review. *See Doe v. Settle*, 24 F.4th 932, 943 (4th Cir. 2022). Under that standard, the City Defendants' actions receive "a powerful presumption of validity." *Id.*; *see Heller v. Doe*, 509 U.S. 312, 319–20 (1993). Boger must show that "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational." *Faircloth v. Finesod*, 938 F.2d 513, 516–17 (4th Cir. 1991) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988)).

Under the rational-basis standard, the City Defendants are not required to articulate the purpose or rationale for the classification. *See Heller*, 509 U.S. at 320. Rather, to establish an equal protection violation, Boger "must negate every conceivable basis which might support the [action]." *Settle*, 24 F.4th at 944. The classification withstands scrutiny if there is "any conceivable reason" behind it and at least some "imperfect fit between [that] plausible reason and some legitimate end." *Id.* at 943–44. It may meet that standard even if it "is not

made with mathematical nicety or [if] in practice it results in some inequality." *Heller*, 509 U.S. at 320.

Against this backdrop, the City Defendants' practice of prosecuting the first-listed owner for speed camera violations survives this highly deferential standard of review. As they point out, the practice is rationally related to the City's legitimate interest in promoting administrative efficiency, avoiding the over-prosecution of a speed camera violation, avoiding the costs associated with issuing multiple citations for a single violation, and limiting the burden on the traffic-court docket. (*See* City Defs.' Mem. at 12–13.) For one, there are rational reasons to issue a summons to the vehicle owner in this situation. The Seventh Circuit described some of those reasons in a decision rejecting an equal protection challenge to a city's system of fining vehicle owners for traffic violations captured by red light cameras. *Idris v. City of Chi.*, 552 F.3d 564, 566 (7th Cir. 2009). It explained:

> A camera can show reliably which cars and trucks go through red lights but is less likely to show who was driving. That would make it easy for owners to point the finger at friends or children—and essentially impossible for the City to prove otherwise. A system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected; these benefits can be achieved only if the owner is held responsible.

*Id.* The City's speed camera enforcement program serves those same legitimate ends by issuing summonses to the owner of the vehicle involved in a speed camera violation.

Nor has Boger shown that it is irrational, in cases involving jointly owned vehicles, to issue a summons to the first owner listed on the vehicle registration. It is conceivable that the first-listed owner is the primary driver of the vehicle or otherwise intends to assume primary responsibility for the vehicle. The City also may have administrative reasons to send a single summons to the first-listed owner instead of sending duplicate summonses to every owner.

- 18 -

The latter approach would guarantee that at least one person who was innocent of the speeding violation would receive a summons. The City has a conceivable interest in avoiding that situation, which likely would lead to over-issuance of speeding tickets, more contested adjudications of speeding offenses, and increased administrative costs for the City.[6] *See City of Fort Lauderdale v. Gonzalez*, 134 So. 3d 1119, 1123 (Fla. Dist. Ct. App. 2014) (relying on similar reasoning to uphold city policy of ticketing first-listed vehicle owner for traffic camera violations under rational-basis review). And, importantly, the first-listed owner is not without recourse if they were not driving the vehicle at the time of the speeding violation. Section 46.2-882.1 allows the owner to rebut the presumption that they were the offending driver by filing an affidavit or providing in-court testimony that identifies the driver. *See* Va. Code Ann. § 46.2-882.1(E). It is not irrational to expect that the first-listed owner can communicate with their co-owner(s), if necessary, to confirm the identity of the driver who committed the violation.

The City's practice of issuing speed camera summonses to the first-listed owner is an imperfect approach to enforcement, as Boger's own prosecution reflects. But the Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Because the court finds that the City Defendants' approach, though imperfect, is rationally related to a legitimate

---

[6] Boger argues that the court should discount the City Defendants' arguments about administrative convenience because they are "post hoc rationalizations" the City Defendants did not consider at the time of enforcement. (Pl.'s Opp'n at 10–12.) Again, though, the rational-basis standard places the burden on the plaintiff to show that a classification lacks any legitimate justification—the defendant is not required to articulate the reasons for the classification. *See Heller*, 509 U.S. at 320.

governmental interest, it will grant the City Defendants' motion to dismiss Boger's equal protection claim.

    ii.    *Due process: failure to investigate (Count 2)*

In Count 2, Boger alleges that the City Defendants violated his due process rights by failing to investigate who was driving the vehicle and prosecuting him solely because his name appeared first on the vehicle registration. (Second Am. Compl. at 12–13.) He claims the failure to investigate "resulted in an arbitrary and unconstitutional decision to prosecute [him]." (*Id.* at 13.)

This claim, which appears to allege a violation of Boger's substantive due process rights, fails as a matter of law. "The touchstone of due process is protection of the individual against arbitrary action of the government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "Only the most egregious official conduct qualifies as constitutionally arbitrary." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 150 (4th Cir. 2014) (internal quotation marks omitted). To violate substantive due process, "the arbitrary action must be unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Id.* (internal quotation marks omitted). As discussed in the context of Boger's equal protection claim, the City has legitimate reasons to send a summons to the first-listed vehicle owner. The fact that owners like Boger may request a state-court hearing to respond to the summons and rebut the statutory presumption underscores that the enforcement scheme does not violate substantive (or procedural) due process.

Boger has not cited any authority that supports a different conclusion. Courts have routinely held that law enforcement's failure to investigate generally does not violate a defendant's due process rights, even in criminal proceedings. *See Baker v. McCollan*, 443 U.S. 137, 144 (1979) (stating that law enforcement's allegedly intentional failure to investigate the defendant's innocence "g[ave] rise to no claim under the United States Constitution"); *Wilkes v. Young*, 28 F.3d 1362, 1364 n.2 (4th Cir. 1994) ("[A]n individual alleging that he was prosecuted in the absence of probable cause states no substantive due process claim."); *Washington v. Buraker*, 322 F. Supp. 2d 692, 702 (W.D. Va. 2004) (rejecting plaintiff's argument that law enforcement's deliberate failure to investigate leads in a criminal case violated his Fourteenth Amendment due process rights); *Humbert v. O'Malley*, No. WDQ-11-0440, 2014 WL 1266673, at *13 (D. Md. Mar. 25, 2014) (holding that "negligent police failures to investigate do not violate the Fourteenth Amendment" and that law enforcement may be liable only for "deliberate or reckless failures to investigate readily available exculpatory evidence") (internal quotation marks omitted). It follows that the same principle applies in civil cases like Boger's traffic-court proceedings, which are subject to even fewer constitutional safeguards than criminal cases. *E.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996).

As Boger has not stated a substantive or procedural due process claim based on the City Defendants' alleged failure to investigate, the court will grant the motion to dismiss Count 2.

    *iii.*    *Due process: denial of a meaningful defense (Count 3)*

Count 3 alleges that Va. Code § 46.2-882.1(E) violates procedural due process by denying those who receive a speeding ticket an opportunity to present a meaningful defense,

and that the City and Altumint applied the statute in a way that prevented Boger from fully contesting the summons. (Second Am. Compl. at 14–15.) This claim focuses on the statutory presumption that the vehicle owner committed the speeding violation and the methods the statute enumerates for rebutting that presumption.

Section 46.2-882.1(E) states that a vehicle owner may rebut the presumption of operation through an affidavit or in-court testimony that "provides the name and address of the person who was operating the vehicle at the time of the alleged violation." Va. Code Ann. § 46.2-882.1(E). According to Boger, the City has treated those as the only two permissible ways to rebut the presumption. Because he could not name the driver who committed the violation, he argues that the City's application of the statute deprived him of a meaningful defense and thereby violated his due process rights. (Pl.'s Opp'n 29–31.)

Boger has not sufficiently alleged that the City or Altumint enforced the statute in such a manner.[7] He does not claim that the City or Altumint affirmatively rejected the defense he raised in his affidavit prior to the state-court hearing. (*See* Second Am. Compl. at 9–10.) Nor does he allege that any City representative argued at the hearing that he could not rebut the presumption of operation without naming the driver. (*See id.*) Instead, Boger explains that the state-court judge dismissed the case as soon as it learned the City prosecuted Boger because he was the vehicle's first-listed owner. (*See id.* at 10.) Because Boger has not identified any

---

[7] Boger's second amended complaint appears to allege both a facial and as-applied challenge to § 46.2-882.1's provisions for rebutting the presumption that a vehicle owner committed the speed camera violation. (*See* Second Am. Compl. at 14–15.) In his response to the motion to dismiss, Boger focuses on the latter. (*See* Pl.'s Opp'n at 29–31.) In any event, because Boger was not deprived of any defense in his state-court case, he lacks standing to bring a facial due-process challenge to § 46.2-882.1. *See, e.g., Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154–55 (1979) ("A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of a statute to the litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.").

actual restrictions on his ability to rebut the statutory presumption in state court, Count 3 fails

as a matter of law.  *See, e.g., Snider Int'l Corp.*, 739 F.3d at 150 (explaining that "the availability

of state procedures [to address a plaintiff's arguments] is fatal" to a procedural due process

claim) (citation omitted).

> iv.    *Denial of access to courts (Count 5)*

In Count 5, Boger alleges that the City denied him access to courts when it instructed

him to submit an affidavit to Altumint instead of to the General District Court clerk.  (Second

Am. Compl. at 17–18.)  He claims that denial violated his First Amendment right to petition

and his Fourteenth Amendment right to due process by "creating unnecessary steps and

confusion that caused additional delay and risk" and "extend[ed] the time needed to exercise

his rights."  (*Id.* at 18.)

Boger's denial-of-access claim is backwards-looking—that is, it asks the court to

remedy "the loss of an opportunity to seek some particular order of relief."  *Christopher v.

Harbury*, 536 U.S. 403, 414 (2002).  To state a First Amendment claim based on the denial of

access to courts, a plaintiff generally must plead facts showing that the defendant's challenged

action actually "hindered his efforts to pursue" a nonfrivolous legal claim.  *Lewis v. Casey*, 518

U.S. 343, 351 (1996).  The plaintiff also "must describe the official acts frustrating the

litigation" and show the relief he seeks is "unobtainable in other suits."  *Christopher*, 536 U.S.

at 415–16.

The City's actions here do not plausibly rise to the level of a First Amendment or due

process violation.  Boger states that he initially submitted his affidavit to Altumint on July 11,

2024.  (Second Am. Compl. at 8.)  After receiving no response from Altumint, he contacted

the state-court clerk on August 23, 2024, to submit a copy of his affidavit and request a court date. (*Id.* at 9.)   At most, the City's delegation of affidavit-processing responsibilities to Altumint contributed to a month-and-a-half delay in Boger's case.[8]   Boger has not cited any authority suggesting that such a delay, standing alone, violates his constitutional rights.   He received a state-court hearing approximately three months after he first received the summons, during which he faced no apparent restrictions on his ability to raise defenses and succeeded in having the ticket dismissed.   Thus, the court will grant the motion to dismiss Count 5.

> v.   *Improper delegation of judicial functions (Count 6)*

Boger's final federal claim alleges that the City violated both his due process rights and "the principle of separation of powers" by delegating the authority to receive and process affidavits to Altumint. (*Id.* at 18–19.)   For the reasons discussed above, Boger has not plausibly alleged that the City's arrangement with Altumint violated his due process rights.   Nor has Boger cited any authority to support his claim that the delegation violated separation-of-powers principles.   Because none of the parties in this case is an agent of the federal government, the case does not implicate the separation of powers established by the U.S. Constitution.

*     *     *

In sum, the court holds that Boger's amended complaint does not state any plausible claim to relief for a federal constitutional violation, and it will dismiss Counts 1 through 6 without prejudice.   Because Boger has not pled sufficient facts to support any of his

---

[8] There is also no indication that the City would have declined to prosecute Boger's speeding ticket had it received his affidavit directly and earlier.   Even after Boger submitted a copy of the affidavit to the state-court clerk, Sergeant Westfall informed Boger that the City would proceed with the prosecution. (Second Am. Compl. at 9–10.)

constitutional claims against the City Defendants, the court need not determine whether the City may be subject to municipal liability under the *Monell* doctrine or whether Westfall or Russ would be entitled to qualified immunity for any constitutional violation.

2.  State-law claims (Counts 7 through 10)

Counts 7 through 10 of the second amended complaint raise various claims under Virginia law.  Count 7 alleges that all Defendants violated the Constitution of Virginia's due process and equal protection clauses.  (Second Am. Compl. at 19–20.)  Counts 8, 9, and 10 allege claims against the City and Altumint for a violation of Va. Code § 46.2-882.1, common-law negligence, and civil conspiracy, respectively.  (*Id.* at 20–22.)

In his response to the City Defendants' motion to dismiss, Boger states that he does not oppose dismissal of Counts 7, 8, and 9.  (*See* Pl.'s Opp'n at 43–45.)  Boger also states that he does not oppose dismissal of Count 10 as alleged against the City, as he concedes the City "is likely entitled to sovereign immunity" on that claim.  (*Id.* at 46.)  The court therefore will grant the City Defendants' motion to dismiss Counts 7 through 10 as unopposed.  Those claims against the City Defendants will be dismissed without prejudice.

In his second motion to supplement his pleadings, Boger asks for leave to add a claim alleging that the City's contract with Altumint violates § 46.2-882.1 because the statute only authorizes "law-enforcement agencies" to contract with private vendors to administer speed camera programs.  (Dkt. 71 at 4–5 (quoting Va. Code Ann. § 46.2-882.1(H).)  Boger argues that the City is not a "law-enforcement agency" and lacked the statutory authority to contract with Altumint.  (*Id.*)  He claims the City's contract with Altumint therefore violates the Dillon

Rule and is void.[9]  In his opposition to the motion to dismiss, Boger alluded to a similar Dillon Rule claim based on the City's alleged lack of authority to (1) prosecute the first-listed owner of jointly owned vehicles or (2) delegate affidavit-processing responsibilities to private vendors.[10]  (*See* Pl.'s Opp'n at 14–18.)

To the extent Boger alleges additional violations of § 46.2-882.1, he has already conceded that the statute "does not explicitly provide for a private right of action" for alleged violations of the statute.  (Pl.'s Opp'n at 44.)  Nor is there any "demonstrable evidence that the statutory scheme necessarily implies" a private right of action for the violations Boger alleges.  *Cherrie v. Va. Health Servs.*, 787 S.E.2d 855, 858 (Va. 2016).  Thus, his proposed claims under the statute do not withstand Rule 12(b)(6) scrutiny.

Under Virginia law, a plaintiff may file a complaint for a declaratory judgment alleging violations of the Dillon Rule.  *See, e.g.*, *Sinclair v. New Cingular Wireless PCS, LLC*, 727 S.E.2d 40, 43 (Va. 2012); *Advanced Towing Co. v. Fairfax Cnty. Bd. of Supervisors*, 694 S.E.2d 621, 623–25 (Va. 2010).  But for the reasons discussed above, Boger lacks Article III standing to seek declaratory relief in this case.  *See Kenny*, 885 F.3d at 287.

Accordingly, the court will deny Boger's second motion to supplement his pleadings as futile.

---

[9] The Dillon Rule is a principle of Virginia law which holds that local governments "have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable." *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 307 (4th Cir. 2021) (citing *Bd. of Zoning Appeals v. Bd. of Supervisors*, 666 S.E.2d 315, 317 (Va. 2008)).

[10] These statutory claims are not in Boger's amended complaint, and a plaintiff cannot assert a new claim by raising it in his brief in opposition to a motion to dismiss. *See, e.g.*, *Marsh v. Va. Dep't of Transp.*, No. 6:14-cv-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (collecting cases).  But Boger later moved for leave to supplement his second amended complaint, and the court will construe that motion liberally to cover all proposed claims challenging the City's statutory authority.

## IV.    Conclusion

For the reasons outlined above, Boger's motion for leave to file a sur-reply (Dkt. 63) will be **DENIED**.  The City Defendants' motion to dismiss (Dkt. 51) will be **GRANTED**, and Boger's claims against the City, Westfall, and Russ will be **DISMISSED without prejudice**.

Boger's two motions for leave to file supplemental pleadings (Dkts. 64 and 71) will be **DENIED** as futile.  Because the court will not grant Boger leave to add his proposed claims challenging the City's statutory authority to contract with Altumint, Boger's motion to certify a question of state law (Dkt. 74) will be **DENIED** as moot.  Boger's revised motion for sanctions against Westfall (Dkt. 50) and motion to clarify or correct the record (Dkt. 57) also will be **DENIED**.

An appropriate Order will issue.

**ENTERED** this  17th  day of June, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE