CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Scott M. Boger, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00083 |
| | ) | |
| City of Harrisonburg, Virginia, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Scott M. Boger's motion to alter or amend judgment, (Dkt. 80), motion for leave to file a third amended complaint, (Dkt. 81), and motion for leave to file a fourth amended complaint, (Dkt. 87). For the reasons that follow, the court will deny the motions.

At the outset, one matter warrants brief mention. Boger's filings contain mischaracterized and, occasionally, fabricated case citations. The court suspects that this may be the result of "hallucinations" by generative artificial intelligence tools. This court recognizes the hurdles that *pro se* litigants face when pursuing claims in federal court. But even for *pro se* litigants, submitting a filing containing false citations—whether created by generative artificial intelligence or not—is unacceptable. Such a practice "causes an enormous waste of judicial resources" as courts wade through irrelevant and misleading material. *Powhatan Cnty. Sch. Bd. v. Skinger*, No. 3:24-cv-00874, 2025 WL 1559593, at *10 (E.D. Va. June 2, 2025). It may also constitute a violation of Federal Rule of Civil Procedure 11 that warrants sanctions.

Given Boger's *pro se* status, at this time, the court merely warns Boger that if any of his future filings fabricates or misrepresents authorities, the court may order him to show cause why he should not face sanctions under Rule 11. *See* Fed. R. Civ. P. 11(c)(3).

## I.    Background

### A.  Factual History

The following facts are taken from Boger's proposed fourth amended complaint, (Proposed Fourth Am. Compl. (Dkt. 87-1)), and are assumed true for purposes of resolving Boger's motions.[1]

On or about July 9, 2024, Boger received a ticket for a speed camera violation in Harrisonburg, Virginia. (*Id.* at 8.) While the vehicle's title and registration listed Boger as a co-owner, Boger was not driving the vehicle when the violation occurred. (*Id.* at 9–10.)

Virginia Code § 46.2-882.1 governs the use of speed cameras and prosecutions of speed camera violations. The statute imposes a civil penalty of up to $100 on the operator of a vehicle caught speeding by a camera. Va. Code. Ann. § 46.2-882.1(C). The statute also creates a rebuttable presumption that the owner of the vehicle was the person who committed the speeding violation. *Id.* § 46.2-882.1(E). The statute offers two methods of rebutting this presumption. First, the owner may "file[] an affidavit by regular mail with the clerk of the general district court that he was not the operator of the vehicle at the time of the alleged violation and provide[] the name and address of the person who was operating the vehicle at the time of the alleged violation." *Id.* Second, the owner may provide that same information

---

[1] For purposes of Boger's motion for reconsideration, the court refers to the facts alleged in the second amended complaint, outlined in more detail in the court's memorandum opinion granting the City's motion to dismiss Boger's second amended complaint. (Dkt. 78.) As discussed below, however, the facts alleged in the second amended complaint, the proposed third amended complaint, and proposed fourth amended complaint do not materially differ.

through sworn testimony in open court. *Id.* The statute provides that any photographs, video, or other recorded images "evidencing [a speed camera] violation shall be available for inspection in any proceeding to adjudicate the liability for such vehicle speed violation." *Id.* § 46.2-882.1(D).

The speeding summons that Boger received from the City of Harrisonburg ("the City") did not instruct him to mail an affidavit to the Clerk of Court, as § 46.2-882.1 requires. (Proposed Fourth Am. Compl. at 8–9.)  Instead, the summons directed Boger to send affidavits to "the City of Harrisonburg" and to Altumint, the third-party vendor that administers the City's speed camera program (and who had issued the summons on the City's behalf). (*Id.*)  On July 11, 2024, Boger mailed an "affidavit of non-operation" to Altumint, explaining that he was not driving the vehicle at the time of the infraction and that the vehicle was jointly owned. (*Id.* at 10.)  Boger's affidavit did not provide a name and address of the actual driver as § 46.2-882.1(E) required, as Boger "lacked personal knowledge sufficient to identify who was driving at the time of the alleged violation." (*Id.*)

By August 2024, Boger had received no response from Altumint. (*Id.* at 11.)  All the while, the City moved forward with its prosecution of Boger. (*Id.*)  On August 23, 2024, Boger sent a copy of the affidavit to the Clerk of the Harrisonburg-Rockingham General District Court and requested a court date. (*Id.* at 12.)  A few days later, the Clerk returned the affidavit and told Boger that he should address it to the "photo ticketing company" (seemingly Altumint). (*Id.*)  According to Boger, at some point between July and October 2024, Altumint "affirmatively rejected" Boger's affidavit for not identifying the driver pursuant to § 46.2-882.1(E). (*Id.* at 11-12.)

Around late August 2024, Boger talked with Sergeant Wayne Westfall over the phone about the speeding ticket.  (*Id.* at 13.)  Westfall is a police officer for the City and helps oversee the City's speed camera enforcement program.  (*Id.* at 6.)  During their conversation, Boger informed Westfall that he was a joint owner of the ticketed vehicle and asked "why he was prosecuted and the co-owner of the vehicle was not."  (*Id.* at 13.)  Westfall told Boger that he received the summons because he was listed "first on the registration."  (*Id.*)

The Harrisonburg-Rockingham General District Court held a hearing on Boger's case on October 9, 2024.  (*Id.* at 14.)  Westfall testified at the hearing and acknowledged that Boger "was prosecuted because his name was listed first on the vehicle registration, without any investigation into who was driving the vehicle."  (*Id.*)  The court then "halted the proceedings, dismissed the case, and admonished the City Attorney [Wesley Russ] and Sgt. Westfall."  (*Id.*)  According to Boger, the court stated: "Stop.  This case is over.  I've heard enough.  I'm dismissing this case. . . . You can't do that with joint owners."  (*Id.* at 14 n.9.)

### B.  Procedural History

The court assumes familiarity with the procedural history of the case, which is discussed at length in the court's previous opinions.  (*See, e.g.,* Mem. Op. (Dkt. 78).)  The court will describe the case's procedural history as relevant to the three present motions.

Boger filed his initial complaint in this court on October 16, 2024, (Dkt. 1), then filed a first amended complaint as a matter of course on October 25, 2024, (Dkt. 9).  His first amended complaint alleged several causes of action under 42 U.S.C. § 1983, seeking damages, a declaratory judgment, and injunctive relief.  (*Id.*)  On December 10, 2024, the court dismissed Boger's first amended complaint without prejudice to the extent it sought injunctive relief.

(Dkt. 45.)  The day after the court entered that order, Boger moved for leave to file a second amended complaint.  (Dkt. 46.)  Defendants did not oppose the motion, and U.S. Magistrate Judge Joel C. Hoppe granted Boger leave to amend on December 16, 2024.  (Dkt. 48.)

Boger's second amended complaint alleged the same causes of action as his first amended complaint,[2] removed his request for injunctive relief, and added a request for nominal damages.  (*See* Second Am. Compl. at 11–24 (Dkt. 49).)  On December 30, 2024, the City Defendants moved to dismiss the second amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6).  (Dkt. 51.)

On July 17, 2025, the court granted the City Defendants' motion to dismiss the second amended complaint.  (*See* Mem. Op.)  As relevant to the present motion for reconsideration, the court dismissed Boger's equal protection claim, under which Boger argued that the City's practice of prosecuting the first-listed owner of a vehicle caught by a speed camera constituted selective prosecution.  (*Id.* at 19–20.)  The court applied the rational basis standard to the City's classification and found it was "rationally related to the City's legitimate interest in promoting administrative efficiency, avoiding the over-prosecution of a speed camera violation, avoiding the costs associated with multiple citations for a single violation, and limiting the burden on

---

[2] Count 1 of Boger's second amended complaint alleged that all Defendants selectively prosecuted Boger in violation of the Equal Protection Clause.  (*Id.* at 11–12.)  Count 2 alleged that the City, Westfall, and Altumint violated the Due Process Clause by failing to investigate who was driving the ticketed vehicle.  (*Id.* at 12–13.)  Count 3 alleged that the City and Altumint violated Boger's procedural due process rights by depriving him of a meaningful defense to the prosecution.  (*Id.* at 14–15.)  Count 4 asserted a Monell claim for municipal liability against the City.  (*Id.* at 15–17.)  Count 5 alleged a claim against the City and the "Court Clerk" for "denial of access to courts" in violation of the Due Process Clause and the First Amendment.  (*Id.* at 17–18.)  Count 6 alleged that the City and Altumint violated the Due Process Clause and separation of powers by delegating "essential judicial functions"—the receipt and processing of affidavits—to a private vendor.  (*Id.* at 18–19.)  Count 7 alleged that all Defendants violated the Constitution of Virginia's due process and equal protection clauses.  (*Id.* at 19–20.)  Counts 8, 9, and 10 allege claims against the City and Altumint for violations of Va. Code § 46.2-882.1, common-law negligence, and civil conspiracy, respectively.  (*Id.* at 20–22.)

the traffic-court docket." (*Id.* at 18.)  The court likewise found that Boger did not plead facts

showing that the City's classification was irrational.  (*Id.* at 18–19.)

On June 23, Boger moved for leave to file a third amended complaint, (Dkt. 81), to

which City Defendants responded in opposition, (Dkt. 83).  In addition to several additional

factual allegations, Boger's proposed third amended complaint would drop Counts 2, 5, 7, 8,

9, and 10 from the second amended complaint, and add three new counts: Count 6, alleging

"structural and procedural due process violation[s]," (Dkt. 81-1 at 26–29); Count 11, a due

process claim for "enforcement of civil penalties under a void, unauthorized contract," (*id.* at

30–32); and Count 12, a *Monell* claim for a "structural due process violation under the

Fourteenth Amendment," (*id.* at 32–35).

 Soon after, Boger moved for leave to file a fourth amended complaint on July 23,

2025, stating that he "identified two drafting errors in the proposed Third Amended

Complaint, highlighted by Defendants in their opposition brief." (Dkt. 87 at 1.)  The proposed

fourth amended complaint does not materially differ from the third amended complaint.  The

main difference is that the former "makes explicit that Plaintiff's equal protection claim" in

his proposed Count 1 "does not depend on a statutory violation." (*Id.* at 2.)  The proposed

fourth amended complaint also asserts that the City's actions necessarily lacked a rational basis

for various reasons.  (Proposed Fourth Am. Compl. at 18–20.)

## II.      Standard of Review

### A.  Rule 15

Boger's motion for leave to amend is governed by Federal Rule of Civil Procedure 15.

Under Rule 15, a plaintiff may amend their complaint "once as a matter of course."  Fed. R.

Civ. P. 15(a)(1).  Once that window passes, as it has here, a plaintiff may only amend "with

the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  "The court

should freely give leave when justice so requires." *Id.*  It should deny leave to amend "only

when the amendment would be prejudicial to the opposing party, there has been bad faith on

the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*,

178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th

Cir. 1999)) (emphasis omitted).

An amendment is futile when "the proposed amended complaint fails to satisfy the

requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525

F.3d 370, 376 (4th Cir. 2008) (cleaned up).  This means that district courts "are free to deny

leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle

Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).  Accordingly, the court will subject

Boger's proposed amendments to the Rule 12(b)(6) standard, examining whether Boger's third

and fourth proposed amended complaints state claims upon which relief can be granted.

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a

complaint. *Edwards*, 178 F.3d at 243.  They do not "resolve contests surrounding the facts,

the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605,

616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  "To survive

a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

satisfies the plausibility standard "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating *pro se* litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). At the same time, though, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing*, 959 F.3d at 618.

## B. Rule 54(b)

The order Boger challenges in his motion for reconsideration "did not resolve all claims against all parties," meaning the order "was interlocutory and thus subject to revision at any time" under Rule 54(b). *Saint Annes Dev. Co., Inc. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (citing Fed. R. Civ. P. 54(b)). "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the

'heightened standards for reconsideration' governing final orders." *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

However, "the discretion Rule 54(b) provides is not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). The Fourth Circuit has instructed that, under the Rule 54(b) standard, courts "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Id.* (quoting *Am. Canoe Ass'n*, 326 F.3d at 515).

### III.    Analysis

#### A.  Motion for Leave to File a Third Amended Complaint

The court begins with Boger's motion for leave to file a third amended complaint. (Dkt. 81.) In analyzing this motion, the court notes that Boger filed a motion for leave to file a fourth amended complaint only approximately one month later. This proposed fourth amended complaint identified several "issues" and "drafting errors" in his proposed third amended complaint "highlighted by Defendants in their opposition brief." (Dkt. 87 at 1).

In other words, Boger apparently intends for his proposed fourth amended complaint to supersede the third. For this reason, the court will construe Boger to have moved to withdraw his motion for leave to file a third amended complaint. The court will grant this motion as so construed and will deny Boger's motion for leave to file a third amended complaint as moot.[3]

---

[3] For reasons discussed below, the court would nonetheless have denied Boger's motion for leave to file a third amended complaint as futile. The proposed third and fourth amended complaints make nearly identical claims. The only material difference between the two proposed complaints is an alteration to Count 1 "mak[ing] explicit that Plaintiff's equal

**B. Motion for Leave to File a Fourth Amended Complaint**

Next, the court proceeds to examine whether "amendment would be futile" as to the claims in Boger's proposed fourth amended complaint. *Edwards*, 178 F.3d at 242. The court addresses each claim in turn.

1. Equal protection (Count 1)

In Count 1 of his proposed fourth amended complaint, Boger again asserts an equal protection claim for selective prosecution against the City's practice of prosecuting the first-listed owner for speed camera violations. (Proposed Fourth Am. Compl. at 18-20.) Boger asserts this practice is irrational and has no "rational relationship to [a] legitimate government interest in traffic enforcement." (*Id.* at 19).

Amendment as to this claim is futile. As previously discussed in the court's order, because the City's classification does not implicate a suspect class or a fundamental right, the court applies rational basis review. *See Doe v. Settle*, 24 F.4th 932, 943 (4th Cir. 2022). Under this "highly deferential standard of review," the City's practice of prosecuting the first-listed owner is rationally related to a legitimate interest in administrative efficiency, avoiding over-prosecution, avoiding costs associated with issuing multiple citations, and limiting the burden on the traffic-court docket. (*See* Mem. Op. at 18.)

Boger's proposed fourth amended complaint offers no new facts or persuasive arguments to change this analysis. As a new argument, Boger asserts that § 46.2-882.1 only allows the City to prosecute "the owner" of a vehicle but not the first *co-owner* of a jointly-

_____

protection claim does not depend on a statutory violation." Dkt. 87 at 2. Because the claims in the fourth amended complaint encompass those in the third amended complaint, the court's analysis below—finding that the proposed fourth amended complaint would be futile—applies to Boger's third amended complaint as well.

owned vehicle. (Proposed Fourth Am. Compl. at 20 (quoting Va. Code § 46.2-882.1).) Thus, Boger argues, the City's prosecution of him was invalid under state law—and therefore the City necessarily lacks a rational basis for its action. (*Id.* (arguing the "absence of statutory authority . . . is fatal to any rational basis justification the City might offer") (emphasis omitted).)

But caselaw forecloses the argument that a government actor automatically lacks a rational basis when their action is invalid or illegal under state law. The Fourth Circuit instructs that for constitutional purposes, "the validity or invalidity of [state actors'] powers under state law is simply irrelevant." *Vander Linden v. Hodges*, 193 F.3d 268, 276 (4th Cir. 1999). Courts' "equal protection review of a state practice is unaffected by the legality of the practice under state law." *Id.*; *see also Snowden v. Hughes*, 321 U.S. 1, 11 (1944)); *Alvarez v. Sch. Bd. of Miami-Dade Cnty.*, No. 20-12448, 2021 WL 2935366, at *2 (11th Cir. July 13, 2021) (citing *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1389 (11th Cir. 1993)) ("[W]hen considering whether a state or local government's actions lack rational basis, there is no consideration of whether that action violates state law.").

For this reason, Boger's proposed amended Count 1 would be futile as a matter of law. Even if the City's action was invalid under state law as Boger argues, the court's previous rational basis analysis remains unchanged.

### 2. Procedural due process: denial of a meaningful defense (Count 3)

Boger's proposed Count 3 seeks to assert a facial and as-applied procedural due process claim against Va. Code § 46.2-882.1. (*See* Proposed Fourth Am. Compl. at 21-25.) For his facial claim, Boger asserts that by requiring owners to identify the person actually driving in

order to rebut the statute's owner-liability presumption, § 46.2-882.1 denies "defendants . . . who cannot name the actual driver[] any meaningful opportunity to contest the charge." (Proposed Fourth Am. Compl. at 22.)  For his as-applied claim, Boger argues that the City and Altumint "constructively rejected his statutory defense" by "failing to process or act on [Boger's] properly submitted affidavit" containing his defense to the summons.  (*Id.* at 16.)

Boger's facial and as-applied claims are futile as a matter of law—even after accounting for Boger's proposed new factual assertions.  Boger has no standing to make a facial claim because, as this court previously noted, "Boger was not deprived of any defense in his state-court case." (Mem. Op. at 22 n.7); *see, e.g.*, *Cnty. Ct. of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154–55 (1979) ("A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights…. [I]f there is no constitutional defect in the application of a statute to the litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.")

Nor can Boger make out an as-applied claim.  While Boger does make new factual assertions in his proposed fourth amended—specifically, that the City "fail[ed] to process or act on Plaintiff's properly submitted affidavit," *id.* at 16—Boger still does not allege facts showing that the City's failure to act on his affidavit "effectively nullif[ied] [his] statutory defense" or denied him a fair proceeding in state court.  (Dkt. 89 at 7.)  To the contrary, Boger's own proposed complaint describes his hearing in state court—a hearing that was successful in dismissing the City's prosecution.  (*See* Proposed Fourth Am. Compl. at 14 n.9 (asserting that the state court halted the proceedings and stated, "Stop.  This case is over.  I've

- 12 -

heard enough. I'm dismissing this case.").)[4]  At bottom, Boger's as-applied claim seems to be that the City should have stopped its prosecution as soon as Boger raised his statutory defense. (*Id.* at 10-13, 21 n.14, 23.)  But as the court previously mentioned, this "availability of state procedures [to address a plaintiff's arguments] is fatal" to Boger's procedural due process claim.[5]  (Mem. Op. at 23) (quoting *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 150 (4th Cir. 2014)).  After all, "[p]rocedural due process is simply a guarantee of fair procedures— typically notice and an opportunity to be heard."  *Mora v. City of Gaithersburg, Md.*, 519 F.3d 216, 230 (4th Cir. 2008) (citations omitted).

For this reason, granting leave to amend the complaint as to Count 3 would be futile.

3.  <u>"Structural" and procedural due process violations (Counts 6 and 11)</u>

Boger's proposed Count 6 and Count 11 would make several new "structural and procedural due process" claims, which this court construes as alleging both procedural and substantive due process claims.  The court discusses each in turn.

i.  *"Unlawful delegation of judicial functions"*

First, Boger claims that the City's instruction to Boger to submit his affidavit to the City and Altumint—and not to the Clerk of Court, as § 46.2-882.1(E) directs—constituted an "unlawful delegation of judicial functions" in violation of both the Virginia Constitution and,

---

[4] Perhaps sensing that these successful state procedures pose a problem to Boger's procedural due process claim, Boger cites a case called "*Snider Int'l Corp. v. City of Norfolk*, 739 F.3d 140, 150 (4th Cir. 2014)" for the proposition that "[t]he existence of state procedures does not defeat a procedural due process claim when the procedures themselves are constitutionally inadequate" or "fundamentally unfair."  (Proposed Fourth Am. Compl. at 22 n.15).  The court cannot identify a case with this name.  The case actually corresponding to that case reporter, *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140 (4th Cir. 2014), does not support Boger's assertion.

[5] In opposition to this point, Boger asserts that "[e]xposure to an imminent and actively enforced unconstitutional process, even if judicial proceedings are halted before full adjudication, constitutes a completed constitutional injury under the Fourteenth Amendment."  (Proposed Fourth Am. Compl. at 21.)  While Boger cites several cases for this assertion, these cases do not remotely support it.  (*Id.* at 21 n.14).  These cases involve either completely unrelated topics (like redressability for Article III standing purposes) or procedural defects in government proceedings.  But Boger does not contend that the hearing he received in Virginia state court was procedurally deficient.

seemingly, federal separation of powers.  (Proposed Fourth Am. Compl. at 29.)  Specifically, Boger seems to argue that the City's instructions to Boger to submit his affidavit to Altumint was a "judicial function" that should have "remain[ed] within the judicial branch."  (*Id.* at 30).

Boger's proposed claim is futile for several reasons.  First, this court has previously explained that "[b]ecause none of the parties in this case is an agent of the federal government, the case does not implicate the separation of powers established by the U.S. Constitution." (Mem. Op. at 24.)  Second, Boger has not identified any facts showing that the City's actions "denied Plaintiff access to a lawful and neutral judicial process" in violation of procedural or substantive due process—especially given that Boger pleaded that he received a state court hearing.  (Proposed Fourth Am. Compl. at 30).

Third, the allegations in this proposed count does not come close to making out a claim for a substantive due process violation.  "Only the most egregious official conduct qualifies as constitutionally arbitrary."  *Snider Int'l Corp.*, 739 F.3d at 150 (cleaned up).  To violate substantive due process, "the arbitrary action must be unjustified by any circumstance or governmental interest, as to *be literally incapable of avoidance by any pre-deprivation procedural protections* or of adequate rectification by any post-deprivation state remedies."  *Id.* (cleaned up) (emphasis added).  Thus, the fact that owners like Boger may request a state-court hearing to object to the City's action "underscores that the enforcement scheme does not violate substantive (or procedural) due process."  (Mem. Op. at 20.)

Finally, even if the City's actions violated the "structural separation of powers mandated by the Virginia Constitution," (Proposed Fourth Am. Compl. at 30), "a violation of state law, without more, does not amount to a due process violation," *Mora*, 519 F.3d at 221

- 14 -

(cleaned up). Instead, state law violations are "primarily of concern to the state and [are] better addressed to state courts and administrative bodies." *WMX Techs., Inc. v. Gasconade Cnty.*, Mo., 105 F.3d 1195, 1200 (8th Cir. 1997) (citation omitted). "To hold otherwise 'would convert every charge of a violation of state law into a due process action.'" *Proctor v. Green*, No. 3:07CV00045, 2008 WL 2942949, at *7 (W.D. Va. July 30, 2008) (quoting *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988)).

      *ii.*    *"Unlawful contractual enforcement"*

Second, Boger claims a "constitutional injury [that] arose . . . from being subjected to an enforcement regime that lacked lawful authority to exist under state law." (Fourth Proposed Am. Compl. at 34). Specifically, Boger claims that the City's delegation of affidavit processing to Altumint was invalid under the City's contract with Altumint because A) the contract's terms did not authorize Altumint to process affidavits and B) the City was not authorized to contract with Altumint in the first place under Virginia Code § 46.2-882.1(H), which only confers contracting authority on "law-enforcement agencies." (*Id.* at 33.)

But Boger does not cite any legal authority for the assertion that the City's actions pursuant to "unlawful contractual enforcement" alone violate Boger's constitutional rights. Nor can the court identify any such authority. To the contrary, as previously stated, state law violations—such as violations of contracts or state statutes, as Boger alleges—do not give rise to a claim under the Due Process Clause. *See Mora*, 519 F.3d at 221.

For these reasons, amendment as to Counts 6 and 11 would be futile.

- 15 -

4. <u>Monell claims (Count 4 and Count 12)</u>

Just as in Boger's second amended complaint, Boger's proposed fourth amended complaint does not plead "sufficient facts to support any of his constitutional claims against the City Defendants." (Mem. Op. at 24–25.) Thus, as before, "the court need not determine whether the City may be subject to municipal liability under the *Monell* doctrine." (*Id.* at 25.) Because Boger's constitutional claims against the City would be futile, the court will also deny Boger leave to amend his *Monell* liability claims as futile.

5. <u>Request for injunctive relief</u>

To the extent Boger seeks to assert claims for injunctive or declaratory relief,[6] the court will deny leave to amend as futile. While Boger's proposed fourth amended complaint pleads that he received a second speed camera citation in January 2025, involving a different jointly-owned vehicle, (Proposed Fourth Am. Compl. at 13–14), Boger still "does not face any ongoing harm of prosecution" that gives him Article III standing to seek injunctive relief. (Mem. Op. at 13.) Instead, "[h]e is in the same position he was when the court first dismissed his claims for injunctive relief, but now with two dismissed speeding prosecutions instead of one." (*Id.*)

\*\*\*

For these reasons, the court will deny Boger's motion for leave to file a fourth amended complaint as futile.

---

[6] Whether Boger wishes to assert claims for injunctive and declaratory relief is unclear. In his proposed fourth amended complaint, Boger struck through his requests for declaratory and injunctive relief, saying that he requested "only if the court thinks it's appropriate." (Proposed Fourth Am. Compl. at 39). However, in his reply briefing, Boger argues in favor of prospective relief. (Dkt. 89 at 20.) The Court will construe Boger's reply briefing as requesting injunctive relief.

**C. Motion for Reconsideration**

The court now proceeds to examine Boger's motion for reconsideration of the court's dismissal of Count 1—his equal protection selective prosecution claim—of his second amended complaint. (Dkt. 81.)

The court dismissed this count because Boger did not plead facts showing that the City's prosecution of first-listed owners for speed camera violations "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational." *Faircloth v. Finesod*, 938 F.2d 513, 516–17 (4th Cir. 1991); (*see* Mem. Op. at 17–18.)

Boger's arguments for reconsideration can be divided into two categories. First, Boger offers several arguments for why the court's rational basis review misapplied the Rule 12(b)(6) pleading standard. Second, Boger argues that the City's alleged lack of legal authority for its prosecution of Boger negated any rational basis the City may have had.

The court addresses Boger's arguments in turn.

1. The court did not misapply the 12(b)(6) standard.

First, Boger argues that he adequately pleaded the City's actions were irrational under the Equal Protection Clause. (Mot. to Alter or Amend Judgment (Dkt. 80) at 2-3.) In its previous order, this court dismissed Boger's equal protection claim after finding that Boger did not "negate every conceivable basis which might support the [City's action]," *Settle*, 24 F.4th at 944, including bases of administrative efficiency, avoiding over-prosecution, and preventing overburdened state dockets. (Mem. Op. at 17–18.) But Boger argues that the *Settle* standard is incorrect—and that all Boger had to do to survive a motion to dismiss was allege

- 17 -

facts that show the "City's conduct [was] plausibly irrational." (Pl.'s Reply in Support of Motion to Amend or Alter Judgment (Dkt. 84) at 17).

But Boger has cited no legitimate or on-point cases for this proposition.[7] Nor has this court identified any. Instead, caselaw uniformly holds the opposite. *See, e.g., Settle*, 24 F.4th at 944. To be sure, Boger has put his finger on the fact that "some tension [exists] between the Rule 12(b)(6) standard and rational basis review." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach,* 495 F.3d 695, 712 n.20 (D.C. Cir. 2007). But even taking Boger's pleaded facts as true, as the court must and did, Boger did not "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)

Second, Boger claims that the court's rational basis review violated the so-called "four-corners" rule by "rel[ying] exclusively on rationales and factual justifications nowhere pleaded in Plaintiff's Second Amended Complaint." (Mot. to Alter or Amend Judgment at 3–4.) Boger has not cited—and the court has not identified—any on-point authority for a rule requiring courts to limit potential government rationales to those offered by the plaintiff's complaint. To the contrary, precedent clearly "task[s]" courts "with imagining any conceivable justification for [a government's] classification." *Settle*, 24 F.4th at 944.

Third, Boger argues that because the court considered "post hoc justifications" for the City's practice, the court was required by Federal Rule of Civil Procedure 12(d) to "either

---

[7] For example, for the assertion that that all Boger had to do to survive a motion to dismiss was allege facts show the "City's conduct [was] plausibly irrational." (Pl.'s Reply in Support of Motion to Amend or Alter Judgment at 17), Boger quotes several lines from *Connelly v. Steel Valley Sch. Dist.,* 706 F.3d 209, 216 (3d Cir. 2013), to support his argument. (*Id.* at 16.) But Boger's quoted language appears to have been fabricated and does not appear in *Connelly.* To the contrary, *Connelly* affirms that in the rational basis context, "[courts] are free to consider any conceivable . . . purpose and are not limited to considering only the goal stated by the state actor." *Connelly,* 706 F.3d at 216 (cleaned up).

- 18 -

exclude such materials or convert the motion to one for summary judgment under Rule 56." (Mot. to Alter or Amend Judgment at 6.)  But courts need not convert a motion to dismiss to one for summary judgment simply when they consider potential rational justifications for government actions.  *Cf. Mixon v. State of Ohio*, 193 F.3d 389, 400 n.9 (6th Cir. 1999) (rejecting that a motion for judgment on the pleadings should have been converted to one for summary judgment under the then-extant version of Rule 12(d), as "[c]ourts may permissively consider factors outside the pleadings when deciding whether a statute bears a rational relationship to a legitimate state purpose.").  To the contrary, courts routinely apply the rational basis standard at the motion to dismiss stage.  *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635 (4th Cir. 2020); *Nat'l Ass'n for Advancement of Multijurisdiction Prac. v. Lynch*, 826 F.3d 191 (4th Cir. 2016); *Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008).

Finally, Boger argues that the court failed to draw reasonable inferences in his favor as required under Rule 12(b)(6), instead giving only "lip service" to his "specific allegations supporting arbitrariness/irrationality, including the state court's express criticism of the policy."  (Mot. to Alter or Amend Judgment at 6.)  In resolving a motion to dismiss under Rule 12(b)(6), the court must draw inferences in Boger's favor regarding his factual allegations, but it need not defer to Boger's preferred conclusion of *law. See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)) (explaining that courts "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments").  Though Boger alleges that the judge at his hearing criticized the City's prosecution, which the court assumed as true, this does not establish that the City's action was

without any conceivable rational basis.  Nor must the court defer to Boger's legal conclusion that the City's practice was irrational.

For these reasons, Boger does not identify a "clear error" of law requiring reconsideration of the court's order.

2.  <u>The City's alleged statutory violation does not warrant reconsideration of Count 1.</u>

As an additional argument for reconsideration, Boger argues—as he did in his proposed fourth amended complaint—that Virginia law does not authorize the City to prosecute the first-listed co-owners of vehicles.  (Mot. to Alter or Amend Judgment at 9.)  Thus, Boger argues, the court's rational basis analysis was in error, as the City's action, being invalid under state law, necessarily lacks a rational basis.  (*Id.*)

For reasons previously discussed, caselaw forecloses this argument.  The Fourth Circuit teaches that for equal protection purposes, "the validity or invalidity of [state actors'] powers under state law is simply irrelevant." *Vander Linden*, 193 F.3d at 276.  Regardless of the validity of the City's action under state law, all that this court must analyze for federal equal protection purposes is whether the City had a conceivable rational basis for its action.  Because the court did so, the court committed no clear error in dismissing Boger's claim.

## IV.    Conclusion

For the foregoing reasons, the court will **DENY** the motion to alter or amend judgment, (Dkt. 80), **DENY** the motion for leave to file a third amended complaint (Dkt. 81), and **DENY** the motion for leave to file a fourth amended complaint, (Dkt. 87).

Boger may not attempt to revive the dismissed claims against the City Defendants as the court will not grant Boger any further leave to amend these claims.

An appropriate Order will issue.

**ENTERED** this 9th day of December 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE